UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TYLER JAMES CAMPBELL,<br><br>    Plaintiff,<br><br>v.<br><br>KLINT STANDER, CCA WESTERN PROPERTIES, INC. DBA CORRECTION CORPORATION OF AMERICA, JOSEPH P. CARDOVA, TOM KESSLER, TIMOTHY WENGLER, ACE THACKER, DAVID AGLER, AND DOEX I-IX,<br><br>    Defendants. | Case No. 1:12-cv-00212-BLW<br><br>**MEMORANDUM AND ORDER** |

## INTRODUCTION

The Court has before it Defendants CCA Western Properties, Tom Kessler, Timothy Wengler, Acel Thacker, and David Agler's Partial Motion to Dismiss Plaintiff's Complaint (Dkt. 13). On April 30, 2012, Plaintiff Tyler Campbell filed a complaint against the Defendants alleging that they violated his Eight and First Amendment rights while he was housed as an inmate at the Idaho Correctional Corporation of America ("ICC"), in Kuna, Idaho.[1] *Compl.*, Dkt. 1.

---

[1] ICC is operated by CCA Western Properties, Inc. dba Correction Corporation of America, a Maryland corporation, through a contract it has with the Idaho Department of Corrections. *Id.* ¶ 9.

**ORDER - 1**

In December 2009, Campbell broke the scaphoid bones in his left wrist. According to Campbell, he immediately reported the injury to correctional officers but was not seen by ICC's medical staff until February of 2010[2] and did not receive treatment until May 25, 2010, when he had his first surgery on his wrist. *Id.* ¶¶ 16-19, 23. Campbell further alleges that, although he made numerous requests, he was not provided with adequate care or therapy after the initial surgery. As a consequence he required a second surgery, which was performed on March 15, 2011. *Id.* ¶¶ 23-26.

The injury became infected following the second surgery. Campbell says, despite his continued requests, he was again denied adequate follow-up treatment, gauze and pain medication. *Id.* ¶¶ 27-31. Defendant Doctor David Agler told Campbell he needed another surgery but would have to wait until his release to have it performed. *Id.* ¶ 33. Campbell responded to this news by telling Defendants he was going to bring a lawsuit against them for inadequate medical treatment. *Id.*

Campbell was kept in medical isolation from October 3, 2011, to October 14, 2011. Campbell maintains Defendants kept him in medical isolation in retaliation for his statements about filing a lawsuit. *Id.* ¶¶ 34-35.

On October 17, 2011, Campbell's wrist was examined by Dr. Watkins, who told Defendants Campbell needed to be seen again in one week *Id.* ¶ 36. Campbell was not seen by Doctor Watkins again until November 16, 2011. *Id.* Campbell was released from

---

[2] The initial complaint states "Campbell was seen by ICC medical staff in February 2009." Dkt. 1 ¶ 19. Due to the date of Campbell's alleged injury, in December of 2009, the Court believes Campbell meant to state he was seen by medical staff in February of 2010.

**ORDER - 2**

ICC on December 16, 2011. *Id.* ¶ 37.Campbell alleges that at the time of his release he still had not been adequately treated and had a gaping and infected wound on his arm. *Id.*

The Court issued summons to all Defendants on June 22, 2012. *Summons*, Dkt. 3. All defendants except Klint Stander and Joseph Cardova waived service of process on July 12, 2012. *Waiver of Service*, Dkt. 4. Defendants' attorney did not accept service on behalf of Stander and Cardova because they are no longer employees of CCA. *Defs' Opening Br.* at 2-3, Dkt. 13. Campbell still has not served process on Stander and Cardova and did not request more time to do so until he filed a response to the motion to dismiss on May 28, 2013. *Pl. Resp. Br.* at 12, Dkt. 14.

The Defendants have moved for (1) dismissal of Defendants Stander and Cardova for insufficient service of process; (2) dismissal of the Eight Amendment claim against CCA, Wengler, and, Agler for failure to state a claim; and (3) dismissal of the First Amendment claim against all Defendants, also for failure to state a claim. Dkt. 13.

## ANALYSIS

### I. Dismissal of Defendants Stander and Cardova

Rule 4(m) of the Federal Rules of Civil Procedure requires the plaintiff to serve all defendants with process within 120 days of filing the complaint. Fed. R. Civ. P. 4(m). However, a court should extend the time period for serving process upon a showing of good cause for the defects in service. *In re Sheehan*, 253 F.3d 507, 512 (9th Cir. 2001). Courts should determine whether a plaintiff has shown good cause on a case-by-case basis. *See id.* In making the determination, a court may consider many factors including whether: "(a) the party to be served received actual notice of the lawsuit; (b) the

**ORDER - 3**

defendant would suffer no prejudice; and (c) plaintiff would be severely prejudiced if his complaint were dismissed." *Id*. Absent a showing of good cause, courts still have the discretion to extend the time period for serving process upon a showing of "excusable neglect." *Lemoge v. United States,* 587 F.3d 1188, 1198 (9th Cir. 2009). *Id.*

The Court cannot find good cause for Campbell's defective service on Stander and Cardova.  A year has passed since the Complaint was filed, and nearly a year has passed since defense counsel refused to accept service for Stander and Cardova. Yet, Campbell provides no justification for his failure to serve these two defendants.  Campbell has provided no evidence that Stander and Cardova attempted to evade service, or that they took any action that contributed to the delay; he has only stated that "[e]fforts to serve those defendants are ongoing." Dkt. 14, p.12. Campbell also fails to state that he would suffer prejudice if Stander and Cardova were dismissed. Given Campbell's failure to show notice, prejudice, or any justification for the insufficient service, the Court cannot find good cause for the deficient service of process.

Campbell responds that Rule 4(m) gives "courts greater leeway to preserve meritorious lawsuits despite untimely service of process." *United States v. 2,164 Watches*, 366 F.3d 767, 772 (9th Cir. 2004).  If a plaintiff fails to show good cause, the Court may exercise its discretion to extend time for service under Rule 4(m).  *Efaw v. Willaims*, 473 F.3d 1038, 1041 (9th Cir. 2007). But the Court's discretion is not limitless**.**  Even if the plaintiff cannot show good cause, a plaintiff must still demonstrate why his inadvertence is excusable to receive more time to serve a defendant. S*ee U.S. for Use and Benefit of Familian Northwest, Inc. v. RG&B Contractors, Inc.*, 21 F.3d 952, 956 (9th

**ORDER - 4**

Cir. 1994). Here, however, Campbell makes no attempt to explain how his failure to serve Standler and Campbell over the past year is excusable. Because the Court can find neither good cause nor excusable neglect, it will grant the Defendant's motion to dismiss Stander and Cordova from this suit, without prejudice.

## II.     Motion to Dismiss Pursuant to Rule 12(b)(6) for Failure to State a 42 U.S.C. § 1983 Claim

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964 (2007). While a complaint challenged in a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. To survive a motion to dismiss, the factual allegations, accepted as true, must also state a claim "that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id*. at 557.

**ORDER - 5**

If the complaint is dismissed, the plaintiff generally should be afforded leave to amend unless it is beyond doubt that the complaint "could not be saved by any amendment." *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009)(issued 2 months after *Iqbal*). The Ninth Circuit has held that "in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Service, Inc.,* 911 F.2d 242, 247 (9th Cir. 1990). The issue is not whether plaintiff will prevail but whether he "is entitled to offer evidence to support the claims." *Diaz v. Int'l Longshore and Warehouse Union, Local 13*, 474 F.3d 1202, 1205 (9th Cir. 2007)(citations omitted).

A plaintiff may bring a § 1983 claim against a state or local government entity and/or individual agents. To succeed on a § 1983 claim against a government entity, a plaintiff must show: "(1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy "amounts to deliberate indifference" to the plaintiff's constitutional right; and (4) that the policy is the "moving force behind the constitutional violation." *Oviatt By & Through Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992)(citing *City of Canton,* 489 U.S. 378, 389-91 (1989).

To succeed on a § 1983 against individual agents, the plaintiff must show: "(1) the defendants acted under color of law, and (2) their conduct deprived [the plaintiff] of a constitutional right" *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985). Individual agents can be liable in an § 1983 claim either personally or in their official

capacity. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). At the pleading stage, a court need not determine in which capacity a defendant is liable; to survive a motion to dismiss the plaintiff need only show the individual could be liable in either capacity. *McRorie v. Shimoda*, 795 F.2d 780, 783 (9th Cir. 1986). Individual agents can be personally liable if they directly participated in the deprivation of constitutional rights, *Larez v. City of Los Angeles*, 946 F.2d 630 (9th Cir. 1991), or if they caused the deprivation to occur. 795 F.2d at 783. Claims against individuals in their official capacity, on the other hand, "represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690, n. 55 (1978).Thus, when bringing a § 1983 action against individual agents in their official capacity, the plaintiff must show a policy or practice was a "moving force" in the constitutional deprivation. 473 U.S. at 165-66.

A.  **Eighth Amendment Claims**

Campbell's first contention is that the medical treatment provided to him by the Defendants constituted cruel and unusual punishment in violation of the Eighth Amendment. "[D]eliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104-05, (1976)(citation omitted). However, an unintentional failure to supply a prisoner with satisfactory medical care does not constitute a violation to the Eighth Amendment, even if it does cause pain or harm. *Id.* The purposeful acts or omissions required for inadequate medical care to become an violation of a prisoner's Eighth Amendment rights may be manifested either "by prison

**ORDER - 7**

doctors in their response to the prisoner's needs or by prison officials in intentionally denying or delaying access to medical care, or [ ] interfering with the treatment once it is prescribed." or *Id.*

**1. Eighth Amendment Claims Against CCA**

The Defendants have moved for the dismissal of the Eight Amendment claim against CCA due to the failure of Campbell to meet the pleading requirements for a § 1983 claim against CCA, a private corporation performing a government function. To succeed on a § 1983 claim against a government entity, a plaintiff must show: "(1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy "amounts to deliberate indifference" to the plaintiff's constitutional right; and (4) that the policy is the "moving force behind the constitutional violation." *Oviatt By & Through Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992)(citing City of Canton, 489 U.S. 378, 389-91 (1989).

It is appropriate for a court to dismiss a § 1983 against a government entity if the plaintiff has failed to clearly identify the policy that led to the deprivation of his constitutional right. See *Neveu v. City of Fresno*, 392 F. Supp. 2d 1159, 1179 (E.D. Cal. 2005).  On the other hand, a court may deny a motion to dismiss a § 1983 claim when a policy has been identified, "even if the claim is based on nothing more than a bare allegation that the individual [ ] conduct conformed to official policy, custom, or practice.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 682-83 (9th Cir. 2001)(quoting *Karim–Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 624 (9th Cir.1988)).

**ORDER - 8**

In *Neveu v. City of Fresno*, the court held the plaintiff had not satisfied the policy-identification requirement of a § 1983 claim with his statement that the Police Chief of the City of Fresno had acted within his policymaking authority when violating his First Amendment rights. 392 F. Supp. 2d at 1178-79. The plaintiff in *Nevue* had not defined or described what the purported policy was that the Police Chief "implemented and/or created" that caused the deprivation of his rights and the court could not infer what the policy was from the complaint. *Id.*

By contrast, the plaintiff in *Lee v. City of Los Angeles* identified the defendant's practice of "rounding up people for arrest and/or extradition without taking proper efforts to ensure that the particular person in custody was actually the person being sought" as the driving force behind the violation of his Fourth Amendment rights. *Id.* at 682. In overturning the district court's dismissal of the §1983 claim, the *Lee* court concluded this plain statement satisfied the policy-identification requirement, at least at the pleading stage. *See id.*

In this case, Campbell's complaint does not clearly identify a CCA policy that led to the denial of his Eight Amendment rights. A court may draw "reasonable inferences" from a complaint. *See* Iqbal 556 U.S. at 678-81. However, like the court in *Neveu*, the Court cannot infer what specific policy or practice the driving force behind Campbell's claim from the Campbell's descriptions of his own medical treatment. Campbell must clearly define the policy at issue in order to put the Defendants on notice of what legal theory he is arguing and on what grounds. Because Campbell's complaint does not satisfy

**ORDER - 9**

the policy-identification requirement, the Court must dismiss the Eighth Amendment claim against CCA, without prejudice, and with leave to amend.

**2. Eighth Amendment Claims against Wengler and Agler**

An individual can be liable in an § 1983 claim either personally or in their official capacity. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). However, a § 1983 claim against an individual in their official capacity is, "only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690, n. 55 (1978). Because the Court has determined that Campbell's Eighth Amendment claim against CCA is deficient, the Eighth Amendment claims against Wengler and Agler, in their official capacity as employees of CCA, are also deficient. The Court will therefore only consider the personal liability of Wengler and Agler in regards to the Eighth Amendment claims against them.

**1. Eighth Amendment Claim against Wengler**

A supervisor can be liable in a § 1983 claim if the supervisor directly participated in or had "knowledge of and acquiescence[d] in unconstitutional conduct by his or her subordinates." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). To survive a motion to dismiss, the "plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington,* 152 F.3d 1193, 1194 (9th Cir. 1998)**.** Respondeat superior liability is not available in § 1983 suits. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

The court in *Iqbal* dismissed the plaintiff's § 1983 claim because it found the plaintiff's statements that the defendants were "'instrumental' in adopting and executing"

**ORDER - 10**

a discriminatory policy were mere legal conclusions and therefore not entitled to be taken as true. *Id.* In contrast, the court in *Starr v. Baca* found the plaintiff's allegations were enough to survive a motion to dismiss a § 1983 claim against the Sheriff defendant. 652 F.3d at 1207. The plaintiff in *Starr* laid out specific facts to demonstrate the Sheriff's indifference; the complaint alleged numerous prior incidents of death or injury caused by the Sheriff's subordinates, it stated the dates and means by which the Sheriff was informed of these incidents, and alleged the Sheriff's failure to act to prevent further incident. *Id.*

Campbell's complaint only specifically mentions Wengler once. Dkt. 14, ¶ 14 ("ICC maintains is own in-house medical unit, under the direction and instruction of CCA, Warden Wengler, Ace Thacker, and Does I-X.").Campbell is correct in that there are many ways in which a supervisor may be found liable in a § 1983 claim. *See e.g. Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 968 (9th Cir. 2001)(holding supervisor "could be held liable in his individual capacity if he knowingly refused to terminate a series of acts by others, which he knew or reasonably should have known would cause others to inflict a constitutional injury"). *Starr*, 652 F.3d 1202, 1205-06("[S]upervisor's participation could include his own culpable action or inaction in the training, supervision, or control of his subordinates, his acquiescence in the constitutional deprivations of which the complaint is made, or conduct that showed a reckless or callous indifference to the rights of others.")(internal quotations omitted). Campbell, however, has not identified in which of these many ways Wengler is liable or how or when that liability arose. Campbell's complaint merely states that all of the Defendants, including

**ORDER - 11**

Wengler, were "deliberately indifferent" to Campbell's medical needs, and that the indifference violated his Eighth Amendment rights. Dkt. 1, ¶¶ 45-46.

Campbell's complaint lacks the specificity that made the deliberate indifference claim in *Starr* sufficient. *See* 652 F.3d at 1207. Similar to the statements in *Iqbal*, Campbell's Eighth Amendment claim against Wengler states a legal conclusion lacking factual allegations to support it. *See* 556 U.S. at 676. Campbell has not adequately alleged that Wengler was either personally involved in or that he acquiesced in the denial of his Eight Amendment rights. Campbell has therefore not met the pleading requirements for his Eighth Amendment claim against Wengler, and the Court must dismiss the claim without prejudice, with leave to amend.

**2. Eighth Amendment Claims against Agler**

"[D]eliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104-05, (1976)(citation omitted). Inadvertent failures to provide adequate medical care, or divergences in opinions over diagnostic techniques or treatments, on the other hand, are not appropriate Eighth amendment issues. *Id.*

In his complaint Campbell's alleges he reported his injury to and repeatedly sent request for medical treatment to Agler, among others. *Compl*, ¶ 18, 40, Dkt. 1. Campbell also alleges that his repeated requests made to all the Defendants for pain medication and appropriate medical treatment were either ignored or denied. *Id.* ¶¶ 23-31. Finally, Campbell asserts Agler's actions constituted deliberate indifference to his medical needs in violation of the Eighth Amendment. *Id.* ¶¶ 45-46. It is not clear from the complaint

how exactly Agler was first informed of Campbell's request or the role Agler played in Campbell's treatment. It appears from the complaint that Campbell was seen by medical professionals upwards of eight times, including at least two surgeries, while he was at ICC. The only indication the complaint gives that Agler had knowledge of, or was personally involved with, Campbell's medical care is Campbell's allegation that Agler told him he needed to have another surgery, but that he would have to wait until his release to have it performed. *Id.* ¶ 33. This would constitute deliberate indifference under the Eighth Amendment if Agler was a decision-maker. However, the complaint does not adequately allege that Agler had any role in deciding whether and when Campbell would receive medical care.

Campbell's assertion that these medical treatments and his related requests for different or better treatment demonstrates deliberate indifference by Agler is, like his claim against Wengler, an unsupported legal conclusion without sufficient factual allegations to support it. Further, Campbell's complaint also fails to allege facts to raise this claim from at most a medical malpractice action to the level of purposeful indifference. Because the claim, as it is written, does not satisfy the pleading requirement for an Eighth Amendment claim against Agler, the Court must dismiss this claim, without prejudice, with leave to amend.

### III.  First Amendment Claim

To survive a motion to dismiss a First Amendment § 1983 claim, a complaint must include: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the

**ORDER - 13**

inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). To meet the fourth element of this test, a plaintiff need not alleged a "*total chilling of his first Amendment rights*" at either the trial or the pleading stage. *Id.* A plaintiff's straightforward assertion that he felt his rights were chilled, even if they were not completely silenced, is enough to satisfy the fourth element. *Id.*

The Defendants argue that Campbell has not satisfied the bare minimum pleading requirements of elements four and five of his First Amendment claim and accordingly have moved to dismiss this claim in regards to all Defendants. The Defendants also contend that Campbell's alleged continual requests for medical care and pain medication demonstrate that his First Amendment rights were not chilled.

In *Rhodes,* the court did not dismiss the plaintiff's § 1983 claim because it did not want the defendants to escape liability simply because the plaintiff was particularly tenacious. *Id.* Even though the plaintiff's persistent complaints appeared to demonstrate his First Amendment rights were not chilled, the plaintiff in *Rhodes*, still included a clear statement that he felt his First Amendment rights had been chilled by the defendants in his complaint. *Id.*

Campbell's complaint clearly states that the Defendants retaliated against him, but it does not assert that the Defendant's retaliation had any sort of chilling effect on him. Campbell's complaint also never plainly states that the Defendant's had no legitimate reason for placing him in medical isolation. The Court can make reasonable inference from a plaintiff's complaint, however, the Court cannot infer that Campbell actually

experienced a chilling effect after the Defendant's alleged retaliation. Accordingly, Campbell has not met the minimum pleading requirement for a First Amendment claim. The Court must therefore dismiss this claim with regards to all defendants, without prejudice, with leave to amend.

## ORDER

**IT IS ORDERED that** Defendant's Partial Motion to Dismiss Plaintiffs' Complaint (Dkt. 13) is **GRANTED**. As explained above, Defendants Klint Stander and Joseph Cardova are dismissed as defendants, without prejudice, without leave to amend; the Eighth Amendment claims against Defendants CCA Western Properties, Inc., dba Correction Corporation of America, Timothy Wengler, and David Agler are dismissed without prejudice, with leave to amend; the First amendment claims against all Defendants are dismissed, without prejudice, with leave to amend; and the Eighth Amendment claims against Defendants Tom Kessler, Ace Thacker, and Does I-IX remain.

DATED: August 16, 2013

_____
B. Lynn Winmill
Chief Judge
United States District Court